## LEWIS *vs.* THE NEW YORK CENTRAL RAILROAD COMPANY.

Under the Act of Congress, approved February 25, 1862, authorizing the issue
of United States notes, and declaring that they shall "be lawful money and
a legal tender for all *debts*, public and private, within the United States,
except duties on imports, and interest," &c. a railroad company is bound to
accept United States notes issued in pursuance of that act, at the value
expressed on the face of them, in payment of fare upon its railroad, when
demanded in advance of transportation on such road.

If it exacts payment of the legal fare of a passenger, in advance, in gold or
silver coin of the United States, or the market value of such coin, in United
States notes, it will be guilty of extortion, and liable to the penalty imposed
by the act of the legislature of March 27, 1857, for asking and receiving a
greater rate of fare than that allowed by law.

CASE agreed upon.   The plaintiff claims judgment for the
penalty of $50, for the defendants asking and receiving
a greater fare from him, on their railroad from Syracuse to
Canastota, than they were authorized by law to demand and
receive.

*C. B. Sedgwick*, for the plaintiff.

*D. Pratt*, for the defendants.

BALCOM, J.   On the 7th day of May, 1867, the plaintiff
applied at the office of the defendants, at the city of Syra-
cuse, to purchase a ticket for passage on the defendants'
railroad from that city to Canastota, in the county of Madi-
son.   The defendants asked and demanded of the plaintiff,
for such a ticket and passage, the sum of forty-four cents in
lawful coin of the United States, or fifty-five cents in paper
currency.   The plaintiff offered and tendered to the defend-
ants forty-four cents in United States notes, in payment for
such ticket and passage, which the defendants refused to
receive ; and thereupon the plaintiff paid, and the defendants
received, for such passage and ticket, fifty-five cents in United
States notes.   The plaintiff handed to the defendants' agent
a one dollar United States note, and such agent paid back

Lewis *v.* New York Central Railroad Company.

to the plaintiff forty-five cents in fractional currency ; which was the way the plaintiff paid for such ticket and passage. The distance from Syracuse to Canastota is twenty-two miles. Chapter 76 of the laws of 1853, (*Laws of* 1853, *p.* 113, § 7,) requires the defendants to carry way passengers on their road at a rate not to exceed two cents per mile. And it is provided, by chapter 185 of the laws of 1857, (*Laws of* 1857, *vol.* 1, *p.* 432,) that "any railroad company which shall ask and receive a greater rate of fare than that allowed by law, shall forfeit fifty dollars ; which sum may be recovered, together with the excess so received, by the party paying the same." The act of congress, approved February 25, 1862, authorizing the issue of United States notes, declares that they shall "be lawful money and a legal tender for all debts, public and private, within the United States, except duties on imports and interest," &c. The Court of Appeals has settled the question, in this state, that this act is constitutional and valid. (27 *N. Y. Rep.* 400.) The only material question, therefore, for determination in this case, is whether the act of congress is broad enough to require the defendants to take United States notes in payment of fare on their road, when they demand and receive such fare in advance of transportation on their road. It is not disputed by the plaintiff's counsel that the defendants may refuse to carry any person in their passenger cars who will not pay the legal fare before he is carried any distance in their cars. It is claimed by the defendants' counsel that no *debt* is due from a passenger to the defendants, before he is carried any distance in their cars, and that as the act of congress only makes the notes of the United States a legal tender for all *debts*, the defendants may exact payment of fare of passengers in advance of their transportation, in gold or silver coin of the United States, or may require them to pay its market value in United States notes. Is such fare to be deemed and regarded a debt, within the meaning of the act of congress, when demanded of a passenger before he enters the defend-

ants' cars to be carried from one station to another on their railroad ? A MS. opinion of Mr. Justice GRIER of the Supreme Court of the United States, in *The Philadelphia and Reading Railroad Company* v. *Morrison and others,* favoring the position that such fare, when exacted in advance, is not a debt, within the meaning of the act of congress, has been presented to us for our consideration. That opinion was delivered in the United States Circuit Court for the Eastern District of Pennsylvania ; and if there be no distinction in principle between the case in which it was delivered and this, it is not a controlling authority in this case. It is only entitled to the respect due to the opinion of an able and learned judge, upon a question somewhat similar to the one in this case. But I think there is a distinction between that case and this, though it is difficult to ascertain from the opinion in that case, the precise facts on which it was based. If, however, there be no material distinction in principle between the two cases, I am constrained to say, my opinion is, Mr. Justice Grier has put too narrow a construction upon the act of congress ; and that according to the true meaning of that act the defendants are bound to accept United States notes, issued under such act, in payment of fare upon their railroad, when demanded in advance of transportation on such road. The defendants are common carriers of persons, and are therefore under a legal obligation to carry all persons who apply for passage on their railroad, and tender the legal fare. *Angell* says " there is an implied engagement on the part of public carriers of persons, not to refuse those who apply for seats by their conveyance, the privilege of traveling in such a manner, provided there is room for them, and a tender of, or offer to pay, the fare, is made at the time." (*Angell on Carriers, 3d ed.* § 524.) *Edwards* says the duties of a common carrier of persons " resemble those of the common carrier of goods ; like him he has entered into *an engagement with the public,* and is bound to serve all who require his services." He also says,

such a carrier of persons "has a right to demand prepayment of his hire, but is not at liberty to choose between those whom he will and will not receive." (*Edwards on Bailments*, 577.) The same doctrine is laid down in *Redfield on Railways*, 344, and it is undisputed elementary law. This case is the same, in principle, that it would be if the parties had previously made a special contract which bound the defendants to carry the plaintiff as a passenger in one of their cars, from Syracuse to Canastota, on being paid the legal fare between those places, viz : two cents per mile. If the parties had made such a contract, the fare between those places would have been a debt due from the plaintiff to the defendants, at the time the former applied at the office of the latter for a passage, and offered to pay for a ticket that would entitle him to ride in one of their cars from one of such places to the other ; and in that case United States notes would have been a legal tender for such fare. Now, as the rights and obligations of the parties are placed on the same footing, by the law of the land, that they would have been by such a special contract as I have supposed, I am of the opinion the fare the plaintiff offered to pay the defendants, from Syracuse to Canastota, should be deemed a debt that was due from the former to the latter, within the meaning of the act of congress, at the time the offer was made to pay the same.

If these views are correct, the plaintiff had the right to pay his fare from Syracuse to Canastota in United States notes at the value expressed on the face of the same ; and the defendants were guilty of extortion in exacting of him payment of such fare at a higher rate than two cents per mile, in such notes. The legal fare the defendants had the right to demand and receive of the plaintiff was forty-four cents, and they compelled him to pay them fifty-five cents in United States notes. The extortion, therefore, was eleven cents. For which eleven cents, and the penalty of fifty dol-

lars, I am of opinion the plaintiff is entitled to a judgment, with the costs allowed in such a case by section 373 of the Code.

BOARDMAN, J.   The franchise enjoyed by the defendant is derived from the state of New York.   The incorporation partakes of all the essential features of a contract, in which the state gives the defendant certain valuable rights and privileges, in consideration whereof the defendant assumes certain duties and obligations to the public at large and for the public accommodation.   The obligations are mutual ; on the one hand not to injure or impair the franchise, on the other to pay or discharge the obligations it has incurred by the acceptance of the charter.   Among these obligations is that which requires the defendant to carry passengers on its road at two cents a mile, under the penalty sought to be recovered in this case, for a refusal, as follows :  "Said consolidated company shall carry way passengers on their road at a rate not exceeding two cents per mile."  (*Laws of* 1853, *p.* 113, § 7.)

The defendant does not make the contract when the ticket is sold, or with the passenger.   That was made with the state, for the benfit of the passenger, when the franchise with all its burdens was accepted and enjoyed.   The duty to carry the passenger upon demand and upon payment of fare is absolute. It is very different from the case suggested on the argument, of a vendor of property fixing an alternative price—in gold or in currency.  *He* is not bound to sell at *any* price, and may require any amount or kind of money or property he pleases, as a condition of parting with his property.   If, however, he was under obligations to sell, and the price had been fixed at or below which he must sell, and the person to whom such sale must be made, the case would be analogous to the one under consideration.   The passenger then by virtue of the contract between the state and the defendant has a positive right to be carried upon the road—it is due to him—the defendant owes it—it is a liability, a duty, an obligation, a

debt from the defendant to each member of the body politic who applies and tenders the legal fare. True, the passenger may not be a party to the contract between the state and the defendant. But it is a contract under which he has acquired rights and is entitled to remedies in case of a refusal of them. The benefits due to him may be by him enforced. The state, too, may have remedies for a breach of such contracts. But they are independent of the individual's.

When, therefore, the passenger applies for his ticket and tenders his money he does not seek to make a contract, but rather to entitle himself to the benefit of an existing contract by the performance of a condition precedent—the payment of fare in advance. He is not seeking to acquire the right of passage, or to put the company under any obligation to him. They both existed, and he was entitled to both, at any and all times. The ticket purchased is not so much evidence of a contract to carry as of fare paid, by which he was entitled to be carried. If by its charter the defendant had agreed to carry a certain class free, no ticket would be required as evidence of the contract, but might be necessary to show the person holding it belonged to such class. The ticket is a mere receipt, showing payment of money. The time when the fare is paid does not affect the question. It may depend upon the contract, or upon rules or regulations deemed in law reasonable and proper. If paid upon the cars, it is sufficient ; nor can the company say we decline to make a contract with you, you must get off. The contract is already made, and the company must accept the fare and discharge the liability which the law has imposed, irrespective of the time when the fare is paid.

This, then, being a contract between the state and the defendant for the benefit, among others, of passengers and which each passenger may enforce, it only remains to consider what must be tendered as performance of the condition precedent, to secure the right of passage.

Prior to the act of congress, approved February 25, 1862,

it is clear that the defendant could have demanded current coin, or its equivalent. By that act United States notes were authorized to be and were issued, which were declared to be "lawful money and a legal tender in payment of all debts, public and private, within the United States," with exceptions not material to us now. The question is thus presented whether a tender of fare in such currency secured a right of passage, or whether the defendant had a right to demand current coin. It might perhaps be contended that the words "lawful money" might by themselves be treated as an equivalent for the words *legal tender* in the broadest and most comprehensive sense in which the latter words are ever used, but I have not examined that view of the case, and prefer to pass and submit another view quite satisfactory to me and equally conclusive.

The word "debts" in the act of 1862 is undoubtedly used in no narrow or restricted sense, but rather in a broad and general sense. It was essential that it should be, since the object of the law was to give as much support and vitality to these notes as possible. Let us see then what signification should be applied to the word. *Webster* defines debt: "That which is due from one person to another—whether money, goods or services ; that which one person is bound to pay or perform to another." The *Encyc. Met.* as, "Any thing had or held of or from another, his property or right, his due ; that which is owed to him, which ought at some time to be delivered or paid to him." *Bouv. Law Dic.* "In a still more enlarged sense it denotes any kind of a just demand." *(See also Newell* v. *The People*, 7 *N. Y. Rep.* 124.) Keeping in view, then, that a contract exists by which the defendant was bound to carry the plaintiff, upon his tendering the legal fare, such fare must be deemed a debt; that which one person is bound to pay to another to secure a right ; that which is due, or owed, to the defendant, which ought at some time to be paid as a consideration for the passage ; a just demand on the part of the defendant, if the plaintiff is or is

to be carried. As we have seen, it makes no difference in the character of the obligation, whether the fare is paid before or after starting, or at the end of the route. The obligation to carry is always the same ; the right of refusal never exists, provided payment is made when demanded. The payment is the consideration for which the railroad company discharges its obligation or debt to the passenger, as the payment of a mortgage entitles the mortgagor to have the same discharged. If a father should make a written contract with a livery keeper to carry any members of his family, who might apply, to a railroad station, whenever requested, at $1 each, payable in advance, could the livery keeper lawfully refuse unless gold was tendered ? I think no one would say that he could, but rather that this was money due under that contract—a debt, and was lawfully payable in legal tender notes. Yet the cases are parallel in all respects, except that one is a written contract, the other is the same kind of an obligation created by the act of incorporation and its acceptance by the defendant. I can see no ground for distinguishing between the two cases—no reason for applying a different rule. They are essentially one and the same.

The cases establishing the constitutionality of the law of 1862, are so numerous and familiar that I need only cite *Metropolitan Bank* v. *Van Dyck*, (27 *N. Y. Rep.* 400.)

For the reasons suggested, I am of opinion the defendant exacted from the plaintiff a greater amount than by law allowed, and that the plaintiff is entitled to judgment against the defendant for $50; and costs, pursuant to the terms of the submission.

MASON, J. This case is submitted upon an agreed case, under section 37 of the Code, upon which the plaintiff claims to recover a penalty of $50 of the defendants, for exacting and receiving from him as a way passenger on their railroad, more than two cents per mile as fare. By the 7th section of

chapter 76 of the laws of 1853, it is declared that when any two or more railroad companies named in this act, are so consolidated, said consolidated company shall carry way passengers on their road at a rate not to exceed two cents per mile. (*Page* 113.) It is conceded that the defendants were consolidated, and fall within this section of the statute. By section 1 of chapter 185 of the laws of 1857, (*vol.* 1, *p.* 423,) it is declared that any railroad company which shall ask and receive a greater rate of fare than that allowed by law shall forfeit $50, which sum may be recovered by law, together with the excess so received, by the party paying the same. (*Laws of* 1857, *vol.* 1, *p.* 432, § 1.) The facts in this case are simply these : the defendants exacted, and the plaintiff paid them fifty-five cents for his fare from Syracuse to Canastota, a distance of twenty-two miles, the plaintiff claiming that forty-four cents was all that they were entitled to. The plaintiff tendered them forty-four cents in United States notes, and the defendants required payment in coin or its equivalent in United States notes. The forty-four cents in coin was of more value than the fifty-five cents in United States notes, and if the defendants were entitled to require payment in coin or its equivalent, they, of course, are not liable in this action for the penalty, under the statute. When this statute of 1853 was passed, the only lawful money was coin or specie. But the plaintiff claims that as the act of congress, (*chap.* 33 *of the Laws of* 1862,) entitled "an act to authorize the printing of United States notes," &c. passed February 25th, 1862, makes those notes lawful money and a legal tender in payment of all debts, public and private, within the United States, except duties on imports and interest upon government bonds and notes, the defendants are obliged to receive the same as lawful money at par, and cannot exact payment in specie, or coin, or its equivalent ; and this brings us to the real question in the case, which is, have the defendants right to demand the payment of fares in specie or its equivalent in United States notes. The defendants

are not, like a private individual, at liberty to carry persons who present themselves as passengers, or not, as they please. Being common carriers, the law imposes upon them the duty to receive and carry all persons who apply for that purpose, and tender the legal fare. This duty is imposed upon them by the common law. (*Angell on Carriers,* § 524. *Redfield on Railways,* 344. *Edwards on Bailm.* 577.) This duty is also imposed upon these companies by the 42d section of the general railroad act. (2 *R. S.* 687, § 42, *5th ed.*) By this section it is declared that every such corporation shall start and run their cars for the transportation of passengers and property at regular times to be fixed by public notice, and shall furnish sufficient accommodation for the transportation of all such passengers and property, &c. and shall take, transport and discharge such passengers and property at and from and to such places, on the due payment of the freight or fare legally authorized therefor ; and the section then declares that the said corporation shall be liable to the party aggrieved, in an action for damages, for neglect or refusal in the premises. (2 *R. S.* 687, § 42, *5th ed.*) The acceptance by the defendants of their franchise imposes upon them these obligations. The grant to these corporations of the powers and privileges conferred upon them, is to be deemed in law a sufficient consideration for an implied contract on the part of the corporation to perform the duties which the charter imposes, and the contract made with the sovereign power enures to the benefit of every individual interested in the performance. (*Wert* v. *The trustees of the village of Brockport,* 16 *N. Y. Rep.* 161.) There is, then, an implied contract resting upon the defendants to carry the plaintiff on the receipt of the fare. The terms of the contract are to carry the passenger on the due payment of the fare. Here, then is the whole case ; the passenger owes the railroad company the fare, which, by the terms of the contract as fixed in the statute, is to be paid in advance, while the corporation owes the duty to carry the passenger on such payment being

made. The passenger owes this whenever he presents him-
self to purchase a ticket to secure a ride upon the railway,
and it is no misnomer to call it a debt. The ordinary and
legal acceptation of the term debt, imports a sum of money
arising upon a contract, expressed or implied. (2 *Hill*, 223.)
A debt, in its most general sense, is defined to be that which
is due from one person to another, whether money, goods, or
services ; that which one person is bound to pay or perform
to another. (*Newell* v. *The People*, 3 *Seld.* 124.) It was
said by this court in *Kimpton* v. *Bronson*, (45 *Barb.* 625,)
in considering the meaning of the word debt, as used in the
act of congress above referred to, that it imports any obliga-
tion by contract, express or implied, which may be discharged
by money, through the voluntary action of the party bound ;
that whenever he may be at liberty to perform his obligation
by the payment of a specific sum of money, the party owing
the obligation is subject to what, in these statutes, is termed
a debt. I am not able to see that it can make any difference
with the case, if it were conceded that there was no such
thing as an implied contract between the passenger and the
carrier, but that the whole duties are imposed by the statute.
The case would, in such case, stand thus : The statute says
that these railroads shall furnish the necessary vehicles for
the transportation of passengers, and shall take and trans-
port such passengers on the due payment of the fare legally
authorized therefor. (2 *R. S.* 687, § 42, *5th ed.*) Now the
passenger presents himself to be carried ; the railroad owes
him the duty, under the statute, to carry him ; and when he
demands that they shall do so, he owes them the fare, as the
statute only imposes the duty on the railroad to carry him
when the due payment of fare shall be made. He then owes
the fare whenever he demands his ride, and must pay it in
advance, and in this view it is quite safe to say he discharges
that which he owes when he purchases a ticket, and pays for
his ride in advance. In other words, he discharges his obli-
gation, and pays money when he owes it ; or, if you please,

pays a debt. If I am correct in my views, as expressed, it follows that the payment of fare by a passenger, in advance of his being carried, discharges a debt within the meaning of the act of congress which makes these United States notes a legal tender in discharge of all debts within the United States, with the exception above stated. It must be borne in mind that the defendants have received their franchise as common carriers from the legislative authority of the state, and are bound in law to conform to the requirements imposed upon them by the sovereign legislative power of the state. They also hold their franchise from a government over which the government of the United States has jurisdiction, and upon certain subjects, the exclusive sovereign power of legislation. The power to declare what shall be lawful money in the state, belongs to the congress of the United States exclusively, and it follows that the defendants hold all their corporate rights from the state, subject to the exercise of this power over them by the general government. If congress should pass an act, stamping all the coins of the United States with twice their present value, such would be their value, and the defendants would be obliged to receive them at such value, for they would be lawful money, and congress has the undoubted right to fix the value of our coins. Congress has the power and the legal right to make these United States notes, issued by the government of the United States, lawful money, and a legal tender in payment of all debts and obligations. This has been expressly decided by the highest judicial tribunals, both of the state and of the United States. (27 *N. Y. Rep.* 400. 34 *N. Y. Rep.* 649. 45 *Barb.* 579. 30 *How. Pr.* 387. 10 *Am. Law. Reg.* 553. 14 *id.* 95.) This the act of Congress, as we have already seen, has done. It has made these United States notes lawful money, and stamped them with a fixed value as such, and declared that they shall be a legal tender in payment of all debts within the United States, with an exception which does not affect the present case. If I am right in the views above expressed, it follows

that the duty is imposed upon the defendants to receive them as such, and they have no right, as regards the passengers they carry, to refuse them, and demand payment in specie or its equivalent.   The defendants being bound to carry their way passengers for two cents per mile, and congress having made these United States notes lawful money, and declared that they shall be a lawful tender, &c. it follows that the defendants rendered themselves liable for the penalty of $50 imposed by the statute, and I advise that a judgment be entered in favor of the plaintiff for the penalty of $50, and eleven cents, the excess paid by the plaintiff.

Judgment for the plaintiff.

[Broome General Term, July 9, 1867.   *Mason, Balcom* and *Boardman,* Justices.]